**F. MICHAEL DAILY, JR., LLC**
**ATTORNEY AT LAW**
**216 Haddon Avenue • Sentry Office Plaza**
**Suite 100**
**Westmont, New Jersey 08108**
**Telephone No. (856) 833-0006**
**Fax No. (856) 833-1083**
**F-9864**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DAVID GUNNINGS, WILLIAM MOORE AND ANDREW LEE,** | **CASE NO.:** |
| **PLAINTIFFS,** | **CIVIL ACTION** |
| **vs.** | |
| **BOROUGH OF WOODLYNNE, VERONICA GITTO, BOROUGH CLERK AND JERALDO FUENTES, MAYOR,** | **COMPLAINT** |
| **DEFENDANTS.** | |

Plaintiffs, David Gunnings, William Moore and Andrew Lee, by way of complaint against the defendants says:

**Parties, Jurisdiction and Venue**

1. The plaintiff David Gunning is an individual residing at 418 Audubon Avenue, Audubon, New Jersey and is employed as a tenured police officer by defendant Borough of Woodlynne.

2. The plaintiff William Moore is an individual residing at 120 S. Poplar Street, Maple Shade, New Jersey and is employed as a tenured police officer by defendant Borough of Woodlynne.

3. The plaintiff Andrew Lee is an individual residing at 1914 Woodlynne Avenue, Woodlynne, New Jersey and is employed as

a tenured police officer by defendant Borough of Woodlynne

4. The defendant, Borough of Woodlynne, is a public entity created under the laws of the State of New Jersey and at all times relevant to this case was the employer of the plaintiffs and the individual defendants.

5. The Defendant, Jeraldo Fuentes, is the Mayor of the Borough of Woodlynne and an individual who engaged in, authorized, approved and/or ratified the actions complained of hereafter by the plaintiffs. He is sued in this matter in both his official capacity as Mayor and as an individual.

6. The Defendant, Veronica Gitto, is an individual and at all times relevant to this matter she was employed by the Borough of Woodlynne as Borough Clerk. She is sued in this matter both as an individual and in her official capacity as Borough Clerk of the Borough of Woodlynne.

7. In this action the plaintiffs assert that they were deprived of rights, privileges, and immunities secured by Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C.A. §2000e).

8. Plaintiffs also assert that they were deprived of rights, privileges, and immunities secured by the New Jersey Law Against Discrimination.

9. Plaintiffs further assert that they were deprived of rights, privileges, and immunities secured by the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et. seq.

and the Common Law of the State of New Jersey and they invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C.A. § 1367 to adjudicate such claims, which claims form a part of the same controversy as the plaintiff's federal claims.

10. Pursuant to 28 U.S.C.A. §1391 venue in this matter is proper in this district in that this is the district where the violations of the plaintiffs' rights occurred.

11. The plaintiffs are qualified to bring their Title VII claims, having obtained a "Right to Sue Letter" dated November 3, 2005 and having filed this action within 90 days of the receipt of it.

**Factual Allegations**

12. David Gunning is a Caucasian male who began his employment with the defendant in November 1997 as a Special Officer and promoted to the position of full time officer in June 1999.

13. William Moore is a Caucasian male who began his employment with the defendant in July 1994 and is currently serving in the title of Detective.

14. Andrew Lee is a Caucasian male who began his employment with the defendant in October 1999 as a Police Officer Second Class and is now serving as Police Officer First Class.

15. At all times Plaintiffs have been qualified for the positions they held or sought.

16. At all times Plaintiffs have met the reasonable

expectations of their employer.

17. Jeraldo Fuentes is a Hispanic male who first served on the Borough Counsel for approximately eight years and in 2003 was elected to serve as Mayor of the Borough of Woodlynne, to which position he was sworn to uphold in January 2004.

18. In 2002 Gunning and Moore took and passed the civil service examination for Sergeant which list was dated December 30, 2002 and expires December 30, 2005.

19. Additionally in November 2003, Officer Lee, who had been previously serving as a Police Officer Second Class was appointed to the position of provisional officer.

20. Notice of the provisional appointment was never forwarded to the Department of Personnel by the Borough.

21. At that time there was no available civil service list as the previous list, on which Lee had been first, had expired.

22. Lee was told that as long as he took the test when next offered and passed, he would be appointed permanently.

23. The test was given in 2004 and Lee scored second on the test but was not appointed permanently into the position but continued as provisional, a position that can, pursuant to the New Jersey Administrative Code, be held for only a year.

24. While plaintiff's were aware of Fuentes' encouragement of increasing the participation of Hispanics within

the borough as citizens while he was on council, after Fuentes' was elected Mayor the active encouragement mutated to a bias wherein individuals of Latino culture were preferred over non-Latino's.

25. This preference included inviting only Latino organizations to take part in community parades and other activities and not personally contacting other community organizations such as the Lions Club, the Masons, Kiwanis, or other groups that are not based upon National Origin or race.

26. Furthermore the Mayor stated that he expected to be contacted whenever individuals of Latino heritage were prosecuted in order to translate and assist in resolving the complaint.

27. In May 2004 the position of Chief of Police was abolished, the incumbent resigned and the duties were assumed by Lt. Cattell.

28. In October 2004 Gunning was standing outside the municipal court room, which was in session, when Mayor Fuentes, before a resident who had received a parking ticket, approached Gunning regarding the ticket and asked him who wrote it.

29. Gunning advised that it appeared that Officer Heintz had written the ticket to which Fuentes replied in a loud voice, "this is what I am talking about, this needs to stop!" and Fuentes stalked into Lt. Cattell's office.

30. Shortly thereafter Gunning found out that Lt. Cattell had ordered Sgt. Settimio to "take care of" the ticket.

31. On November 17, 2004, a court night, Councilman Hernandez and Mayor Fuentes met with Lt. Cattell and were provided with Internal Affairs investigation forms.

32. Gunning was advised that the forms had been requested to file charges for a traffic stop conducted by Officer Heintz and backed up by Officer Gunning.

33. Said traffic stop involved Councilman Hernandez's girlfriend.

34. Gunning was told by Officer Heintz that he had been told to dismiss the ticket and when Heintz requested guidance from Officer Gunning, Gunning stated that the ticket was properly issued and that Officer Heintz did nothing incorrect or improper when he issued the ticket.

35. Officer Gunning then approached Lt. Cattell and they had a lengthy one hour discussion about what was going on with the tickets and Mayor Fuentes.

36. Lt. Cattell asked Officer Gunning in front of Inv. Kirshbaum and Officer Lee "is this that ticket that puts up the wall between the police and council" to which Gunning responded "I believe that if this ticket is dismissed then this may not be legal and when are you going to stop this" and "how many times are you going to fix tickets for him and what else is next?"

37. Later that same evening Gunning met with Officer Heintz who stated that "I'm just going to dismiss the ticket

because I don’t want to get in trouble.”

38. The ticket was dismissed at the next court date, November 24, 2005.

39. During this period Officer Lee was attempting to have his status clarified as it had been one year since he had been appoint as a provisional Police Officer First Class, but the list for Police Officer had yet to be certified, and he had not been appointed permanently.

40. To that end he spoke with Lt. Cattell and when that was unsuccessful, attempted to speak directly with the Mayor.

41. On Thursday, December 30, 2004 Fuentes contacted Lt. Cattell and hold him to contact patrolman Bonilla, who is Latino, and advise him that he was going to be promoted to Acting Sergeant on January 3, 2005 at the Borough’s reorganization meeting and to bring a police Sergeant badge.

42. Fuentes was fully aware Bonilla had not taken the test for Sergeant and thus was not eligible for the position per the Department of Personnel guidelines as the Borough of Woodlynne is civil service.

43. Furthermore the borough had not created the position of acting Sergeant by ordinance so there was no open position of Acting Sergeant, there was however an open position of Sergeant.

44. Despite Fuentes’ knowledge that Bonilla was not eligible for the position he had Bonilla sworn in on January 3,

2005 at the Borough meeting.

45. During this same meeting a Director of Public Safety was sworn into office.

46. Believing that the promotion of Bonilla was not legal, Gunning and Moore contacted their Fraternal Order of Police representative who after contacting the New Jersey Department of Personnel (DOP) verified that since there was an active list, even though it had not be certified by the borough, Officer Bonilla could not be sworn in as Acting Sergeant.

47. Gunning and Moore contacted the DOP and requested that Mr. Leslie Summiel investigate the legality of the promotion.

48. The DOP contacted the Borough and Fuentes reluctantly rescinded the unlawful promotion of Bonilla.

49. Despite the fact that there was a list for Sergeant that had yet to be certified the Borough failed to certify the list and has yet to fill the position of Sergeant while the list is set to expire as of December 30, 2005.

50. As evidenced by the fact that an attempt to make Bonilla sergeant, the Borough in fact has a need for another sergeant, but has refused to fill the position in order to retaliate against the plaintiffs for having complained about the unlawful promotion of Bonilla and to prevent a Caucasian rather than a Latino from becoming a sergeant.

51. This will require that the individuals who are

currently on the list retake the test and will permit defendants to appoint someone to the position in a provisional title.

52. In March 2005 Fuentes contacted the Public Safety Director Ronald Jackson and questioned why he spotted Officer Lee outside the Borough boundaries while on the clock.

53. When questioned Officer Lee explained that he had been attempting to locate a vehicle for a traffic stop and when he was unable to do so, turned around to return to the Borough.

54. To this response Fuentes stated that he wanted Lee dropped to a Class II officer and a background investigation completed only on the number one candidate, Bayardo Arroliga, a Latino male, despite the fact that Bayardo Arroliga had applied for the position of police officer previously and had been disqualified after an investigation.

55. Mayor Fuentes also stated several times that he was looking into disbanding the police department which plaintiffs believe is in retaliation for the filing of the complaint with the Department of Personnel.

56. March 30, 2005 the plaintiffs filed a complaint with the Equal Employment Opportunity Commission.

57. Finally on June 9, 2005 Plaintiff Lee was sworn in as a Police Officer First Class for the Borough of Woodlynne.

58. Plaintiff made several telephone calls to the State of New Jersey to verify that his status was updated based upon the

threats made to disband the police department.

59. When his appointment was not certified with the Department of Personnel, plaintiff approached the Borough Clerk to request that she file the appropriate paperwork.

60. Just prior to meeting with Gitto, Lee overheard Gitto state to another employee "who the fuck does he think he is, the only reason he was hired in the first place is because he dropped the lawsuit. Discrimination, I'll show him discrimination."

61. It took in excess of five weeks for plaintiff's status to be updated with the Department of Personnel.

62. The aforesaid actions of the defendants were without any legitimate basis and were so egregious and outrageous as to inflict emotional distress upon the plaintiffs.

63. The aforesaid acts were performed by the defendants with malice and/or with intentional indifference and/or with reckless indifference to the civil rights, state and federal, of the plaintiff, were motivated by impermissible race considerations and were especially egregious.

64. The foregoing acts of the individual defendants were performed under color of state law pursuant to official or established custom of the Borough of Woodlynne and/or were ratified by the Borough of Woodlynne and/or were performed by the individual defendant as a final decision maker with full authority to make the

decisions at issue.

65. As a result of the aforesaid acts the plaintiffs have sustained a deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States.

66. As a result of the foregoing, plaintiffs have sustained lost earnings and pay along with other pecuniary losses, lost income, benefits and profits and other material damages and said damages and losses are expected to continue into the future.

67. As a result of the foregoing, plaintiffs have sustained non-pecuniary losses including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and such other non-pecuniary losses as maybe disclosed in discovery.

**First Count**

68. The aforesaid acts of the defendant employer, along with such other discriminatory actions as maybe disclosed in discovery, constituted discrimination against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race and deprived plaintiffs of their rights with respect to their compensation, terms, conditions, and privileges of employment, because of their race in violation of 42 U.S.C.A. §2000e-2.

69. The aforesaid acts of the defendant, along with such other discriminatory actions as maybe disclosed in discovery, constituted retaliation against the plaintiffs because they had

opposed an unlawful employment practice in violation of 42 U.S.C.A. § 2000e-3.

70. As a direct result of said unlawful acts the plaintiffs sustained the previously described damages.

71. Pursuant to 42 U.S.C.A. §§ 1988 and 2000e-5, plaintiff is entitled to attorney's fees and expert fees in connection with the bringing of the claims alleged in this count.

WHEREFORE, plaintiffs demands judgment against defendants for compensatory damages including back pay and such other injunctive relief as will redress the actions of the defendants, front pay, attorney's fees, expert fees, prejudgment interest, interest, costs and such other relief as the court deems just.

**Second Count**

72. The aforesaid acts the defendants, along with such other discriminatory actions as maybe disclosed in discovery, constituted discrimination against an individual and/or aiding and abetting discrimination with respect to an individual’s compensation, terms, conditions, or privileges of employment, because of such individual’s race and deprived plaintiffs of their rights with respect to their compensation, terms, conditions, and privileges of employment, because of their race, in violation of N.J.S.A. 10:5-12.

73. The aforesaid acts of the defendant, along with such other discriminatory actions as maybe disclosed in discovery,

constituted retaliation against the plaintiffs because they had opposed employment practices declared unlawful by the New Jersey Law Against Discrimination.

74. As a direct result of said unlawful acts the plaintiffs sustained the previously described damages.

75. Pursuant to N.J.S.A. 10:5-27.1, Plaintiffs are entitled to attorney's fees and expert fees in connection with the bringing of the claims alleged in this count.

WHEREFORE, plaintiffs demand judgment against the defendants for compensatory damages including back pay, punitive damages, and such other injunctive relief as will redress the actions of the defendants, attorney's fees, expert fees, prejudgment interest, interest, costs and such other relief as the court deems just.

**Third Count**

76. The aforesaid actions of the defendants constituted constituted violations of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et. seq.

77. As a direct result of said unlawful acts the plaintiffs sustained the previously described damages.

78. Pursuant to N.J.S.A. 34:19-5 plaintiffs are entitled to attorney’s fees in connection with the bringing of this action.

WHEREFORE, plaintiffs demand judgment against the defendants for compensatory damages, nominal damages, punitive

damages, injunctive relief as will redress the actions of the defendants, attorney's fees, expert fees, prejudgment interest, interest, costs and such other relief as the court deems just.

**Fourth Count**

79. In the event plaintiffs are not qualified to bring an action pursuant to the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et. seq.; then plaintiffs allege that the actions of the defendants were contrary to public policy and offensive to same and as a result thereof plaintiff is entitled to recover for the previously described damages.

**WHEREFORE,** Plaintiffs demands judgment against the defendants for compensatory damages, punitive damages, interest and costs.

**Fifth Count**

80. The aforesaid acts of the defendants constituted retaliation against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's charge under 42 U.S.C.A. 2000e-2 and deprived plaintiff of his rights with respect to his compensation, terms, conditions, and privileges of employment, because of his charges, in violation of 42 U.S.C.A. §2000e-3(a).

81. As a direct result of said unlawful acts the plaintiff sustained the previously described damages.

82. Pursuant to 42 U.S.C.A. § 2000e-5(k) Plaintiff is entitled to attorney's fees and expert fees in connection with the bringing of the claims alleged in this count

**WHEREFORE,** plaintiff demands judgment against the defendants for compensatory damages including back pay, reinstatement of overseas employment and such other injunctive relief as will redress the actions of the defendants, attorney's fees, expert fees, interest, costs and such other relief as the court deems just.

**Sixth Count**

83. The aforesaid acts the defendants, along with such other discriminatory actions as maybe disclosed in discovery, constituted retaliation against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s charge under in violation of N.J.S.A. 10:5-12.

84. The aforesaid acts of the defendant, along with such other discriminatory actions as maybe disclosed in discovery, constituted retaliation against the plaintiffs because they had opposed employment practices declared unlawful by the New Jersey Law Against Discrimination.

85. As a direct result of said unlawful acts the plaintiffs sustained the previously described damages.

86. Pursuant to N.J.S.A. 10:5-27.1, Plaintiffs are entitled to attorney's fees and expert fees in connection with the bringing of the claims alleged in this count.

WHEREFORE, plaintiffs demand judgment against the defendants for compensatory damages including back pay, punitive

damages, and such other injunctive relief as will redress the actions of the defendants, attorney's fees, expert fees, prejudgment interest, interest, costs and such other relief as the court deems just.

**JURY DEMAND**

Plaintiff herewith demands a jury trial as to all issues triable by jury.

F. MICHAEL DAILY, JR., LLC
Attorney for the Plaintiff

s/F. Michael Daily, Jr.
BY:________________________________
F. Michael Daily, Jr.