UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

———————————————————————— :
GUNNINGS ET AL.,                 :
              Plaintiffs,        :
                                 :          Civil Action No.
         v.                      :          05-5459 (NLH)
                                 :
BOROUGH OF WOODLYNNE, ET AL.,:
              Defendants.        :          **OPINION**
———————————————————————— :

**APPEARANCES:**
F. Michael Daily, Jr.
216 Haddon Ave
Westmont, NJ 08108
*Attorney for Plaintiffs*

Linda A. Galella
Allan E. Richardson
915 Haddon Avenue
Collingswood, NJ 08108
*Attorneys for Defendants Borough of Woodlynne and*
*Mayor Jeraldo Fuentes*
     and
George J. Botcheos, Jr.
436 Commerce Lane, Suite a
West Berlin, NJ 08091
*Attorneys for Defendant Veronica Gitto*

**HILLMAN**, District Judge

     Before the Court are motions for summary judgment filed by

defendants Borough of Woodlynne ("Borough") and Mayor Jeraldo

Fuentes, and by defendant Veronica Gitto, as well as defendants'

joint motion to dismiss the complaint of plaintiff William Moore

and to award attorneys' fees.  For the reasons expressed below,

defendants Borough's and Fuentes's motion for summary judgment

will be granted in part and denied in part, defendant Gitto's

motion for summary judgment will be adjourned for thirty days to provide for additional briefing, and defendants' joint motion to dismiss the complaint of William Moore will be granted in part and denied in part.

## I.  JURISDICTION

Plaintiffs brought claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, alleging that defendants discriminated against them on the basis of race and, therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  This Court exercises supplemental jurisdictional over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## II.  BACKGROUND

Plaintiffs were all former members of the Borough's police department.  In their complaint, they allege violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq. ("NJLAD").  Plaintiffs, all Caucasian males, allege that defendants practiced reverse discrimination on the basis of race with respect to their employment in favor of Latinos. Plaintiffs also allege that defendants violated the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA"), and retaliated against them for exercising their rights pursuant to Title VII and the NJLAD.

### A.  Plaintiff Officer David Gunnings

Plaintiff Officer David Gunnings was hired in November 1997 by the Borough as a police officer Class II (special officer) and promoted to police officer Class I (full time officer) in June 1999.  Officer Gunnings, along with plaintiff Officer Moore, took and passed the civil service exam for sergeant and were placed on the promotions list effective December 19, 2002 and expiring December 18, 2005.  When Officers Gunnings and Moore were placed on the list, Officer Robert Settimio was also listed and ranked first.  Officer Settimio was hired in January 2003 as sergeant before Mayor Fuentes took office in January 2004.  Sergeant Settimio is not Latino.

In October 2004, Officer Gunnings alleges he was approached by Mayor Fuentes outside a Municipal Court room and asked who issued a parking ticket to a Latino female.  The female has also been identified as Councilman Hernandez's girlfriend.  Officer Gunnings stated that he told Mayor Fuentes that Officer Heintz had issued the ticket and the Mayor responded in a loud voice, "this is what I am talking about, this needs to stop!" and went into Lt. Cattel's office.  According to plaintiffs, on November 17, 2004, Lt. Cattrell provided Mayor Fuentes and Councilman Hernandez with Internal Affairs investigation forms.  Officer Gunnings alleges  that he was told that the forms were requested to file charges against him and Officer Heintz for the traffic

stop of Councilman Hernandez's girlfriend.  Officer Gunnings also alleges that he met with Lt. Cattel regarding the ticket incident during which Lt. Cattel stated "is this that ticket that puts up the wall between the police and council" and Officer Gunnings responded "I believe that if this ticket is dismissed then this may not be legal and when are you going to stop this."  Officer Gunnings also alleges that during this meeting he said to Lt. Cattell, "how many times are you going to fix tickets for him and what else is next?"  Officer Gunnings further alleges that later that day he met with Officer Heintz who stated "I'm just going to dismiss the ticket because I don't want to get into trouble."  The ticket was dismissed at the next court date.

According to plaintiffs, on December 30, 2004, Mayor Fuentes contacted Lt. Cattell to have him advise patrolman Ronald Bonilla, a Latino, that Bonilla was going to be appointed acting sergeant.  On January 3, 2005, the Mayor and Borough appointed Bonilla as acting sergeant.

Plaintiffs Gunnings and Moore contacted the New Jersey Department of Personnel ("DOP") who confirmed that since there was an active "sergeants list," Officer Bonilla could not be sworn in.  Defendants state that they forgot that the list existed.  Plaintiffs point out that in addition to Bonilla not being next in line on the active sergeants list, Officer Bonilla

4

had not taken the test for sergeant and thus was not eligible for
the position according to DOP Guidelines.  Further, until Officer
Bonilla's appointment, no position of acting sergeant had
previously existed.

The DOP contacted the Mayor and Borough regarding Bonilla's
appointment, and they rescinded it on January 13, 2005, ten days
after the appointment.  Defendants allege that the appointment of
Bonilla was in reaction to the absence of Sergeant Settimio due
to the illness of his mother.  Mayor Fuentes testified that he
had chosen to appoint Bonilla over plaintiff Moore, who was on
the active list, because Moore was the only detective and it
would have been disruptive to the detective bureau.  Mayor
Fuentes also stated that he anticipated only having Bonilla in
the position of acting sergeant for one to three months until
staffing problems were resolved.

Mayor Fuentes testified that after the appointment of
Bonilla was rescinded the Borough did not hire another sergeant
because Sergeant Settimio returned to work after the death of his
mother and because the new Director of Public Safety, Charles
Jackson, a non-Latino, felt that only one Sergeant was needed.
Also, Mayor Fuentes stated that he renewed discussions regarding
merging the Borough's police department with the Collingswood
police department.

Plaintiffs allege that although the need for a sergeant was clear by virtue of the Mayor and Borough appointing an acting sergeant, defendants intentionally refused to fill the position in order to retaliate against plaintiffs for having complained about the unlawful promotion of Officer Bonilla and to prevent a Caucasian rather than a Latino from filing the position.

**B.   Plaintiff Officer Andrew Lee**

Plaintiff Officer Andrew Lee was hired in October 1999 by the Borough as a police officer Class II.  In November 2003, Lee was appointed to the position of provisional police officer, a position which according to the New Jersey Administrative Code can only be held for one year.  In 2004, Officer Lee took the civil service test and scored second.  Bayardo Arolliga, who is Latino, also took the test and scored first.  The results were released in December 2004.

In March 2005, plaintiffs allege that Mayor Fuentes contacted the Director of Public Safety, Ronald Jackson, and questioned why Officer Lee was spotted outside the Borough while on duty.  Officer Lee maintains that he explained that he was attempting to locate a vehicle for a traffic stop and returned to the Borough when he was unable to do so.  In response, plaintiffs allege that Mayor Fuentes stated he wanted Officer Lee dropped to a Class II police officer and that only Officer Arroliga should

6

be considered for the position of full-time police officer even though Officer Arroliga's application had been previously disqualified after an investigation.  Defendants state that Mayor Fuentes and Council President Espinosa told Lee that they could not hire another full-time officer at that time due to budgetary constraints.

Officer Arolliga did not submit an application for the promotion to police officer, Class I; only Lee submitted an application.  Six months after he passed the civil service exam, on June 9, 2005, Lee was hired as a police officer, Class I, by the Borough.  Officer Lee alleges that his appointment was not certified with the DOP.  When he approached defendant Gitto's office to request that she file the appropriate paper work, Officer Lee states that he overhead Gitto say to another employee, "who the fuck does he think he is; the only reason he was hired in the first place is because he dropped the lawsuit. Discrimination, I'll show him discrimination."  Plaintiffs state it took in excess of five weeks for Officer Lee's appointment to be certified.  Officer Lee alleges that his application was intentionally delayed because defendants wanted to hire Officer Arolliga instead.

## C.  Plaintiff Detective William Moore

Plaintiff Detective William Moore was hired in July 1994 by

7

the Borough and during all relevant times served as a detective.
Although plaintiffs have alleged facts concerning Mayor Fuentes
and the Borough's selection of a Latino over Detective Moore for
acting sergeant as well as their decision not to fill the
position of sergeant after Bonilla's appointment was rescinded,
counsel for both parties have stated that Detective Moore has not
participated in discovery or pursued litigation of his claims.
Particularly, counsel for defendants propounded written discovery
upon Moore's counsel on May 1, 2006, but received no response
despite follow-up correspondence.  On December 18, 2006, a
telephone conference was held with the Magistrate Judge wherein
the Judge was advised that Moore did not respond to written
discovery requests and that counsel for Moore had been unable to
reach him despite repeated telephone calls.  The Magistrate Judge
entered an amended scheduling order extending the discovery date
and requiring Moore to respond to written discovery by January 5,
2007.  Moore did not respond to discovery or to deposition
notices despite being furnished with a copy of the Magistrate
Judge's Order by his counsel.

On February 7, 2007, a subpoena ad testificandum was served
upon Moore's shift commander at the Collingswood police
department for Moore's deposition to be held on February 23,
2007.  Moore did not appear for the deposition.  On February 14,

8

2007, a telephone conference was held with counsel for the parties and the Magistrate Judge.  Counsel advised the Judge that Moore had failed to comply with the Court's Order compelling discovery and counsel for Moore stated that Moore had not returned phone calls or responded to letters.  The Magistrate Judge stated that defense counsel could file a motion to dismiss Moore's complaint.  Defense counsel filed the motion to dismiss which was denied by the Magistrate Judge who entered an Order directing that Moore provide all outstanding discovery and appear for deposition no later than June 15, 2007.  That Order went ignored by Moore.  Counsel states that he continues to be unresponsive to attempts to contact him regarding this litigation.  As a result, before the Court is defendants' second joint motion to dismiss Moore's complaint and for attorneys' fees.

## III.  DISCUSSION

### A.   Defendants' Motion to Dismiss Moore's Claims and to Award Attorneys' Fees.

Pursuant to Fed.R.Civ.P. 37(b)(2)(C), if a party fails to obey a discovery order, the Court may impose sanctions including the dismissal of the action or parts thereof.  See Fed.R.Civ.P. 37(b)(2)(C).  In addition, the Court may order the party to pay reasonable expenses, including attorneys' fees for failure to

9

obey the Order "... unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."  <u>See</u> Fed.R.Civ.P. 37(b).

Dismissal of a complaint "... is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff."  <u>Donnelly v. Johns-Manville Sales Corp.</u>, 677 F.2d 339, 342 (3d Cir. 1982).  In <u>Poulis v. State Farm Fire and Cas. Co.</u>, 747 F.2d 863, 868 (3d Cir. 1984), the Third Circuit outlined six factors to be considered when determining whether a complaint should be dismissed.  The <u>Poulis</u> factors include: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party ... was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim."  <u>Id.</u>

First, counsel for Moore represented to the Magistrate Judge that they made repeated telephone calls and sent correspondence to Moore regarding his responses to discovery that went unanswered.  Counsel for Moore also represented that they furnished him with copies of the Magistrate Judge's Orders

10

compelling him to respond to written discovery and to make
himself available for deposition.  Further, Moore failed to
appear after a subpoena was served upon his shift commander at
the Collingswood police department for his deposition.  Moore's
counsel has stated that Moore has been uncooperative and
unresponsive regarding discovery requests in this litigation.  As
such, we find that Moore is personally responsible for the
failure to respond to defendants' discovery requests.

Second, defendants have been prejudiced by Moore's failure
to respond to their discovery requests.  Moore has not answered
any written interrogatories or requests for documents.  He has
failed to appear for deposition.  With no discovery having been
provided by Moore, defendants are at disadvantage to prepare
their defense against Moore's claims.

Third, Moore has shown a history of dilatoriness.
Defendants first propounded discovery upon Moore on May 1, 2006,
and have received no response to their requests over a year and a
half later.  During that time, Moore's counsel has made repeated
attempts to contact him to no avail.  Moore has ignored two
discovery Orders of this Court and a subpoena to appear for his
deposition.

Fourth, Moore's conduct appears to be willful.  There is no
evidence that Moore has been unavailable or unaware of the

11

discovery requests or Orders.  He is the plaintiff in this matter and, therefore, is aware that he has sued the defendants and has a responsibility to pursue litigation that he has commenced. Since the filing of his complaint, Moore has been unresponsive to requests from counsel and to Orders of this Court.

Fifth, sanctions other than dismissal would appear not to be effective.  Moore has already ignored two Orders of this Court compelling him to participate in discovery.  He has also ignored a subpoena to appear for his deposition.  It is doubtful that a further Order would be effective in getting Moore to respond to discovery requests.  It appears that Moore has no interest in pursuing this litigation and dismissal would be appropriate.

Lastly, it is difficult to assess the true meritoriousness of his claim since Moore has failed to participate in discovery. However, should his case not be dismissed and, arguably speaking, proceed to trial, it seems doubtful that he would be able to prevail on his claims because (1) he would have to appear and participate (something he has not done during discovery); and (2) evidence that was not produced in discovery could be barred.  In other words, it is possible that only the defense's unopposed evidence would be considered at any supposed trial.

Thus, analysis of the Poulis factors indicate that dismissal of Moore's claims is the appropriate sanction pursuant to

Fed.R.Civ.P. 37(b)(2)(C).

In addition, defendants have requested that the Court order Moore to pay reasonable attorneys' fees for the filing of this motion to dismiss. Although dismissal of Moore's claims is warranted, the imposition of attorneys' fees is not.

A court can dismiss a case for failure to prosecute. See Link v. Wabash R. Co., 370 U.S. 626, 629 (1962) (stating that "[t]he authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."). The imposition of attorneys' fees as a sanction, however, arises in situations where the party has acted in "willful disobedience of a court order" or "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons... .'" Roadway Exp., Inc. v. Piper, 447 U.S. 752, 766 (1980)(citations omitted).

Here, although it appears that Moore has acted in willful disobedience of the Court's discovery order, there is no evidence that it was done for the purpose of delaying litigation or to intentionally cause defendants to incur costs. It appears that Moore has no interest in pursuing his litigation. Our concern is that if it is true that Moore lost interest in this case, then he should have properly withdrawn or dismissed his claims rather than cause defendants to file motions and serve discovery. While

13

this is a concern, the sanction of awarding attorneys' fees should not be imposed lightly.  Id. (stating that "[l]ike other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.").  Moore is not the only plaintiff in this case; he is one of three.  Therefore, defendants have not incurred costs to defend this litigation based upon Moore's claims alone. Defendants seem to recognize this and only request attorneys' fees for the filing of this motion to dismiss.  While the filing of this motion is particular to Moore, it is not a lengthy motion and does not involve intricate application of legal principles. Based on the record, the dismissal of Moore's claims is an appropriate sanction without the added sanction of attorneys' fees.

Therefore, the Court grants defendants' motion to dismiss Moore's claims, but denies its motion to award attorneys' fees for the filing of this motion.

**B.  Motion for Summary Judgment**

**1.  Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

14

the moving party is entitled to a judgment as a matter of law."
Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.
P. 56(c).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  Id.  In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence "is to be believed and
all justifiable inferences are to be drawn in his favor."  Marino
v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.
2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating
the absence of a genuine issue of material fact.  Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has
met this burden, the nonmoving party must identify, by affidavits
or otherwise, specific facts showing that there is a genuine
issue for trial.  Id.  Thus, to withstand a properly supported
motion for summary judgment, the nonmoving party must identify
specific facts and affirmative evidence that contradict those

15

offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

### 2.  Reverse Discrimination

Plaintiffs have brought claims under Title VII, 42 U.S.C. § 2000e-2[1] and the New Jersey Law Against Discrimination ("NJLAD")[2] alleging that defendants engaged in "reverse discrimination" by

---

[1]  Section 2000e-2 provides in relevant part:

(a) Employer practices - It shall be an unlawful employment practice for an employer-

  (1)  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

  (2)  to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

[2]  N.J.S.A. 10:5-12 provides in pertinent part:

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:

a.  For an employer, because of the race, creed, color, national origin, ancestry, ... to discharge ... from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment;... .

discriminating against them with respect to their employment on the basis of their race as Caucasians.  Discrimination claims brought under Title VII and the NJLAD are analyzed according to the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later clarified in Texas Dep't of GGG. Affairs v. Burdine, 450 U.S. 248 (1981), and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). See Dooley v. Roche Laboratories, Inc., No. 04-2276, 2007 WL 556885, at *5 (D.N.J. Feb. 15, 2007)(applying the same analysis to plaintiff's Title VII and NJLAD claims).

The McDonnell Douglas burden-shifting test was fashioned by the Supreme Court to permit plaintiffs to offer circumstantial evidence of discrimination.  See McDonnell Douglas, 411 U.S. at 802.  The McDonnell Douglas test is applied in cases of reverse discrimination as well.  See Iadimarco v. Runyon, 190 F.3d 151, 158 (3d Cir. 1999).  First, the plaintiff must establish a prima facie case of discrimination which is accomplished if the plaintiff can show "sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based on a trait that is protected under Title VII." Id. at 161.  If the plaintiff presents a prima facie case, then the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for its adverse action.  See id. at

17

157.  If the employer provides such a reason, then the burden
shifts back to the plaintiff to show that the employer's
proffered reason is pretext by pointing to some evidence, "'...
direct or circumstantial, from which a fact finder could
reasonably either (1) disbelieve the employer's articulated
legitimate reasons; or (2) believe that an invidious
discriminatory reason was more likely than not a motivating or
determinative cause of the employer's action.'" Id. at 166
(quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).
Although the burden of proof shifts under this test, the burden
of persuasion remains at all times with the plaintiffs.  See U.S.
Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716
(1983) (remarking that plaintiff may succeed in carrying this
burden "... either directly by persuading the court that a
discriminatory reason more likely motivated the employer or
indirectly by showing that the employer's proffered explanation
is unworthy of credence.") (quoting Texas Department of Community
Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

     The plaintiffs state that they meet the first prong of the
test because they have alleged that a Latino male discriminated
against Caucasian males.  Defendants state that plaintiffs have
presented no evidence that the Borough or Mayor Fuentes has
discriminated against them as white males in favor of Latinos.

Rather, defendants argue, most of the Borough's police force was
composed of white males and non-Latinos.  Although the defendants
are correct in that plaintiffs cannot simply rely on an
allegation that a Latino male discriminated against Caucasian
males, there is evidence in the record to make out a prima facie
case of discrimination.

Plaintiffs have presented evidence that Officer Gunnings was
a candidate listed on the "sergeants list" but that the Borough
and Mayor Fuentes promoted Officer Bonilla, a Latino, as acting
sergeant, despite the existence of that list.  Also, when the
appointment was rescinded, defendants did not promote Officer
Gunnings to acting sergeant but chose to allow the position to
remain vacant.  Plaintiffs have also presented evidence that
defendants favored the promotion of Officer Arroliga to a full-
time police officer over the application of Officer Lee.  This
evidence allows the Court to conclude that the plaintiffs can
show "sufficient evidence" that defendants were treating
Caucasians less favorably than Latinos based on race.

The burden now shifts to defendants to offer a legitimate,
non-discriminatory reason for the adverse action.  With regard to
Officer Gunnings, Defendants state that they were all under the
impression that the sergeants list had expired.  They also state
that after Officer Bonilla's appointment to acting sergeant was

19

rescinded, the position was not filled because the appointment
was intended to be temporary until the newly appointed Public
Safety Director came on board and until Sergeant Settimio
returned to work.  With regard to Officer Lee, defendants argue
that a wait of six months to make him a full-time officer was not
unreasonable since during that time budgetary issues were being
resolved.  Defendants also point out that Officer Arolliga scored
first on the civil service exam and that it is reasonable to want
to hire the candidate who scored the highest.  Finally,
defendants argue that Officer Lee was eventually hired full-time
and, therefore, suffered no adverse employment action.

Defendants offer legitimate, non-discriminatory reasons for
their actions regarding Officers Gunnings and Lee.  Plaintiffs
must now proffer sufficient evidence for a factfinder to conclude
that those reasons are pretext.  Plaintiffs state that Officer
Gunnings was on the active sergeants list and was qualified to
serve in that position.  They also state that Sergeant Settimio
had recommended either Officer Gunnings or Officer Moore for the
position.  Plaintiffs argue that since Officer Gunnings was on
the active list and recommended for the position, the selection
of Officer Bonilla suggests that the basis for his selection was
his race.  In addition, plaintiffs argue that after defendants
were forced to remove Office Bonilla from the position of acting

sergeant ten days after the appointment, the Mayor had no interest in considering the two Caucasian candidates for the position.

Plaintiffs also state that Officer Lee's promotion to full-time officer was delayed because defendants wanted to hire a Latino instead.  They argue that Officer Lee was eligible for the promotion as he was one of the top three candidates.  See N.J. Admin. Code 4A:4-4.8.[3]  They also state that Officer Arolliga did not submit an application and was ineligible since he was on probation, and that a previous check on his eligibility indicated that Officer Arolliga had a criminal record.  Although Officer

---

[3]  N.J.A.C. 4A:4-4.8 states in relevant part:

(a) Upon receipt of a certification, an appointing authority shall take whichever of the following actions is appropriate when a permanent appointment is to be made:

1. Appoint the eligible whose name has been certified from the special reemployment list;

2. Appoint the eligible whose name has been certified from regular or police or fire reemployment lists; or

3. Appoint one of the top three interested eligibles (rule of three) from an open competitive or promotional list, provided that:

   i. Disabled veterans and then veterans shall be appointed in their order of ranking from an open competitive list;
   ii. If the eligible who ranks first on a promotional list is a veteran, then a non-veteran may not be appointed; and
   iii. See N.J.A.C. 4A:4-2.15(i) for tie scores.

Lee admits he was hired six months after he met all
qualifications for promotion to full-time police officer, he
maintains that information regarding his permanent position "...
was not forwarded in a timely manner to the [New Jersey]
Department of Personnel ... [and that] eighteen months later,
[he] had not been registered with the pension plan serving the
police officers nor had any payments being made on his behalf by
defendants."  In addition, the six month delay could amount to an
adverse employment action if it resulted in withholding salary
and benefits eligible only to full-time officers.

    We find that plaintiffs have presented enough evidence that
reasonable jurors could conclude that defendants' reasons for the
adverse employment actions were pretext.  Although defendants
maintain that Officer Bonilla was appointed acting sergeant
because they forgot there was an active list and only expected to
appoint him for a limited time, we cannot say that reasonable
minds could differ as to the interpretation of their actions.  It
could seem unlikely that an entire administration would simply
forget about a sergeant's list, a document presumably well
established procedurally.  Also, even if there had not been a
perceived need to continue with an acting sergeant, Officer
Bonilla's appointment was rescinded in ten days.  It could seem
unlikely that an appointment so necessary was rendered obsolete

in ten days.  As for Officer Lee, reasonable minds could conclude that defendants were "dragging their feet" with regard to Lee's appointment in hopes of appointing Officer Arolliga especially if Officer Arolliga did not submit an application and had a previously known criminal background that impinged upon his eligibility.

Therefore, we cannot say as a matter of law that there is no genuine dispute over material facts regarding the employment decisions concerning Officers Gunnings and Lee.  Defendants' motion for summary judgment regarding plaintiffs' Title VII and NJLAD claims is denied.

### 3. New Jersey Conscientious Employee Protection Act

The New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, et seq., provides protection to "whistleblowers" from retaliation by their employer who report their employers' illegal activity.  See Reynolds v. TCM Sweeping, Inc., 340 F.Supp.2d 541, 545 (D.N.J. 2004) (citing Hernandez v. Montville Twp. Bd. of Educ., 808 A.2d 128 (N.J.Super. 2002)). "CEPA is remedial social legislation designed to promote two complementary public purposes: 'to protect and [thereby] encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" Dannunzio v. Prudential Ins. Co.

23

of America, 927 A.2d 113, 120 (N.J. 2007)(citations omitted).
"As broad, remedial legislation, the statute must be construed
liberally."  Id.

The pretext theory of discrimination under CEPA triggers a
burden-shifting, three-step process, not unlike that used for
claims of race discrimination described above.  See Kolb v.
Burns, 727 A.2d 525, 530-31 (N.J. Super. 1999).  First,
plaintiffs must prove a prima facie case of retaliation.  Id.  If
they establish a prima facie case, the burden shifts to
defendants to provide a non-retaliatory reason for the adverse
employment decisions.  Id.  Upon such a showing, the burden
shifts back to plaintiffs to explain why defendants' reason is
pretext.  Id.  In order to show the reason is pretext, plaintiffs
"must demonstrate such weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in the
employer's proffered legitimate reasons for its action that a
reasonable factfinder could rationally find them 'unworthy of
credence,' and hence infer 'that the employer did not act for [the
asserted] non-discriminatory reasons.'" Id. at 531 (citing
Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir. 1994) (other
citations omitted)).

In order to state a prima facie claim, "[a] successful
plaintiff under CEPA must show four elements: (1) He reasonably

24

believed that an activity, policy or practice of defendant, his
employer, was in violation of a law, rule or regulation
promulgated pursuant to law or was fraudulent or criminal; (2) He
objected to or complained about the activity, policy or practice;
(3) Retaliatory action was taken against him (i.e. adverse
employment action occurred); and (4) There was a causal link
between the plaintiff's action and the retaliatory or adverse
action of the defendant employer." Reynolds, 340 F.Supp.2d at
545 (citing McCullough v. Atlantic City, 137 F.Supp.2d 557, 573
(D.N.J. 2001)).

     Plaintiffs argue that they make out a prima facie case by
alleging that: (1) they reasonably believed that the Mayor
violated a law, rule or regulation by engaging in "ticket-fixing"
when in October 2004 the Mayor allegedly confronted Officer
Gunnings at Municipal Court regarding a parking ticket issued to
Councilman Hernandez's girlfriend; (2) that Officer Gunnings
expressed his concern about the Mayor "fixing tickets" to his
supervisor Lt. Cattell; (3) that two retaliatory actions were
taken in retaliation for plaintiffs' objection to the alleged
ticket-fixing: (a) the police department was abolished, and (b)
Officer Gunnings was denied appointment as acting sergeant; and
(4) (a) that the Mayor's statements after learning about the
parking ticket "this is what I am talking about, this needs to

25

stop!" along with Lt. Cattel's statement to Officer Gunnings "is this that ticket that puts up the wall between the police and council" shows a causal connection between the abolishment of the police department following Officer Gunnings' complaint regarding the dismissal of the ticket; and (b) the failure of the Mayor to appoint Officer Gunnings as acting sergeant following Gunnings' complaint to Lt. Cattel shows the causal connection between his complaint and the adverse employment action.

The prima facie case outlined above pertains to Officer Gunnings' claim but not Officer Lee's.  There are no allegations that Officer Lee witnessed, objected to or reported the alleged ticket-fixing incident.  Further, defendants argue that Officer Lee admitted in his deposition that he did not engage in any whistle-blowing activities against defendants.  As such, Officer Lee has not made out a prima facie case under CEPA and his claim is dismissed.

On the other hand, plaintiff Gunnings, if believed by the fact finder, has met the first and second prongs of his prima facie case: he reasonably believed that the Mayor was violating the law when he requested that the parking ticket issued to the Councilman's girlfriend be dismissed, and he complained about that conduct to his superior ranking officer in the police department.  His belief that a Mayor should not engage in

26

"ticket-fixing" is also objectively reasonable.  See Monto v.
Township Of Sparta, No. A-0279-06T5, 2007 WL 4472106
(N.J.Super.App.Div. Dec. 24, 2007).  With regard to the third
prong, we address each alleged retaliatory adverse employment
action separately.

With regard to the alleged retaliatory action of abolishing
the police department, defendants argue that the abolishment of
the police department cannot be considered an adverse employment
action, and even if could be, that it was abolished due to
financial difficulty.  Defendants also state that discussions
about merging the police departments occurred well before Fuentes
became Mayor and therefore could not be in retaliation for the
alleged ticket-fixing incident.

The abolishment of the police department is not recognized
as a retaliatory adverse employment action under these facts
because the Borough has the statutory power to make such a
decision.  See N.J.S.A. 40A:14-118 (providing a municipality with
the authority to provide for the health, safety and welfare of
the municipality); see also Ragan v. Fuentes, No. 05-2825, 2007
WL 2892948, at *5 n.3 (D.N.J. Sept. 28, 2007)(holding that the
Borough has the statutory power to abolish the position of chief
of police but not to strip the current chief of his title and

27

authority without implicating due process considerations).[4]
Plaintiffs have not disputed defendants' assertion that
abolishing the Borough's police department in favor of being
serviced by Collingswood has resulted in more police services and
greater savings to the Borough.  They also have not alleged that
the take-over by Collingswood resulted in loss of position, rank
or pay to them individually.  Plaintiffs have provided no
information at all as to their status and rank after the
Borough's police department disbanded to support a claim of
adverse employment action.

Even if the abolishment of the police department could be
considered an adverse employment action, it is undisputed that
defendants contemplated merging the Borough's police department
with Collingswood's police department before Fuentes became Mayor
and well before the alleged ticket-fixing incident.  The
statements alleged to have been made by the Mayor and by Lt.
Cattrell indicate that the incident may have caused a riff or
strained relations between the Mayor and the police department

---

[4]  In Ragan, we also held that Mayor Fuentes enjoyed some measure
of immunity when engaging in conduct which constitutes a
legislative act. Id. at *7-8.  Although defendants do not raise
that argument in this case, it is likely that the act of
abolishing a police department by ordinance would be
substantively and procedurally legislative. See id. at *8.  In
light of our disposition of defendants' motions, we need not
address this issue at this time.

but, even taking all inferences from those statements in favor of plaintiffs, they do not show it precipitated the abolishment of the police department.  There is simply no evidence that defendants made the decision to abolish an entire police department in order to retaliate against Officer Gunnings for complaining to Lt. Cattrell about the ticket being dismissed.

Officer Gunnings also proffered a second retaliatory action in reaction to his complaint about the Mayor's alleged ticket-fixing incident - that he was not selected as acting sergeant even though he was qualified and listed on the active sergeants list.  This proffered evidence satisfies the third prong of Officer Gunnings' prima facie case because a fact finder could conclude that this was an adverse employment action.  Also, the fact that it occurred less than two months after he complained to Lt. Cattrell suggests a causal connection satisfying the fourth prong of his prima facie case.  See Cahill v. Parkway Ins. Co., 2005 WL 2708987, at *5 (N.J.Super.App.Div. Oct. 24, 2005) (finding five months could present a causal connection in CEPA claim).

Defendants counter that the reason Officer Gunnings was not selected was because they forgot about the active sergeants list and, regardless, Officer Bonilla's appointment was rescinded ten days later.  Plaintiffs respond that a reasonable fact finder

29

could conclude that defendants' reason is pretext and we agree.
It is not unreasonable to find that defendants did not simply
forget a well-established procedure, but deliberately failed to
appoint Officer Gunnings as punishment for his complaining about
the alleged ticket-fixing incident.

Therefore, plaintiff Lee's CEPA claims are dismissed,
plaintiff Gunnings' CEPA claim alleging that the police
department was abolished in retaliation is dismissed, but his
claim that he was not appointed acting sergeant in retaliation
for his complaining about the alleged ticket-fixing incident
remains.

**4.  Retaliation under Title VII and NJLAD**

To establish a prima facie retaliation claim under Title VII
or the NJLAD, plaintiffs must show: (1) that they engaged in a
protected activity; (2) that they suffered an adverse employment
action; and (3) that there was a causal connection between the
protected activity and the adverse employment action.  See Hanani
v. State of New Jersey Dept. of Environmental Protection,
205 Fed. Appx. 71, 80 (3d Cir. 2006) (citing Rauser v. Horn, 241
F.3d 330, 333 (3d Cir. 2001); Delli Santi v. CNA Ins. Cos., 88
F.3d 192, 198 (3d Cir. 1996)).

The standard for retaliation under Title VII and the NJLAD
echoes the standard for a CEPA claim and, therefore, the same

30

analysis is used.  See <u>Donofry v. Autotote Systems, Inc.</u>, 795
A.2d 260, 269 (N.J.Super.App.Div. 2001)(stating that "[i]t is
beyond dispute that the framework for proving a CEPA claim
follows that of a LAD claim" and that "[i]t is also plain that
the methods of proof and the applicable burdens in LAD and CEPA
cases generally follow Title VII law...") (citations omitted).
The parties also rely on the facts and arguments outlined under
the CEPA claim as proffered evidence for the retaliation claim
and we apply them here.

    As with the CEPA claim, plaintiff Lee has not alleged a
prima facie case and his claim is dismissed.  Plaintiff Gunnings
has stated that he complained to his superior about Mayor
Fuentes's alleged ticket-fixing incident which satisfies the
first prong.  However, he has not proffered facts to support any
reasonable finding that the abolishment of the police department
was an adverse employment action and, even it were, that it was
in retaliation for his protected activity.  He has, however,
proffered sufficient facts to satisfy the second and third prongs
with respect to his claim that he suffered an adverse employment
action when he was not selected as the acting sergeant and that
there was a causal connection between his complaining to his
superior about the alleged ticket-fixing incident and the failure
of defendants to appoint him less than two months later.

31

The burden now shifts to defendants to provide a legitimate, non-retaliatory reason for their action.  See Iadimarco, 190 F.3d at 157.  Defendants rely on their arguments under plaintiffs' CEPA claim and, therefore, for the same reasons explained above, we find a reasonable fact finder could disbelieve their explanation of forgetting the sergeants list.  Id. at 166. Therefore, Officer Gunnings' retaliation claim under Title VII and the NJLAD regarding the alleged retaliatory action denying his appointment as acting sergeant survives summary judgment.

**5.   Individual Liability of Mayor Fuentes under Title VII**

Defendants argue that Mayor Fuentes cannot be held individually liable under Title VII as a matter of law.  We agree.  The Third Circuit has held that "Title VII prohibits unlawful employment practices against employers."[5]  See Emerson v. Thiel Coll., 296 F.3d 184 (3d Cir. 2002) (stating that individual employees cannot be held liable under Title VII); Kachmar v. Sungard Data Sys., Inc., 100 F.3d 173 (3d Cir. 1997) (same); Sheridan v. E.I. Dupont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996) (stating that " . . . Congress did not intend to hold individual employees liable under Title VII.").  Defendants

---

[5]   As defined in 42. U.S.C.A. §2000e(b), the "term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees... ."

32

have neither alleged that Mayor Fuentes was their employer nor alleged facts that would support such a finding.  See Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (affirming dismissal of Title VII claims against Mayor of City in his individual capacity).  Therefore, plaintiffs' Title VII claims against Mayor Fuentes in his individual capacity are dismissed.

### 6.   Individual Liability of Mayor Fuentes under CEPA

Defendants rely on an unpublished decision by the Law Division of the New Jersey Superior Court, Ecker v. Dana Transport Systems, Inc., 2006 WL 740468, at *2 (N.J.Super.L.Div. Feb. 03, 2006), in which the Court ruled that CEPA does not impose liability on a co-employee or supervisor who engages in retaliatory conduct.  In Ecker, the Court referred to a New Jersey Supreme Court decision, Higgins v. Pascack Valley Hospital, 730 A.2d 327 (N.J. 1999), and concluded in two short paragraphs that the New Jersey Supreme Court affirmed the trial court's ruling that CEPA does not impose individual liability. Id. at *2.

The Third Circuit, however, clearly stated in Fasano v. Federal Reserve Bank of New York, 457 F.3d 274 (3d Cir. 2006) that "CEPA allows for individual employee liability." Id. at 289 (relying on Palladino ex rel. United States v. VNA of S. N.J., Inc., 68 F.Supp.2d 455, 474 (D.N.J. 1999).  In Palladino, the

Court provided a thorough analysis of the Higgins case and stated that although the issue of individual liability under CEPA was squarely before the New Jersey Supreme Court, the Court chose not to address the trial court's holding that individual liability is permitted under CEPA. Id. at 473. Instead, the Court avoided the issue and held that the record did not support a finding of individual liability and affirmed the dismissal of the individual defendants. Id. At 474. The District Court found that the New Jersey Supreme Court's decision not to address the issue supported the interpretation that CEPA does provide for individual liability because "[p]resumably the Supreme Court would not look to whether there was individual liability if the law did not allow for individual liability." Id.

We follow the rule as stated by the Third Circuit in Fasano and the reasoning in Palladino and find that CEPA provides for individual liability. See also Bowen v. Parking Authority of City of Camden, No. 00-5765, 2003 WL 22145814, at *22 (D.N.J. Sept. 18, 2003)(finding that CEPA permits claim for individual liability). Therefore, defendants' motion for summary judgment to dismiss plaintiff's CEPA claim against Mayor Fuentes individually is denied.

**C.  Defendant Veronica Gitto's Motion for Summary Judgment**

Defendant Gitto filed a motion for summary judgment arguing

34

that the actions of Veronica Gitto do not represent the type of egregious conduct that rises to the level of a violation of substantive due process.  We do not decide whether her actions do or do not violate plaintiffs' substantive due process rights because plaintiffs have not brought such claims.  Plaintiffs sued defendants for discrimination and retaliation under Title VII and the NJLAD as well as CEPA.

As explained above, there is no individual liability of employees under Title VII.  <u>See</u> <u>Emerson</u>, 296 F.3d at 184.  Ms. Gitto is not alleged to be an employer.  Therefore, the Title VII claims are dismissed as a matter of law against Ms. Gitto as an employee of the Borough.

The parties have not addressed whether Ms. Gitto is liable under the NJLAD or CEPA.[6]  Therefore, decision on the motion for summary judgment will be adjourned for thirty days for counsel for Ms. Gitto to provide briefing on the issue of whether plaintiffs' NJLAD and CEPA claims survive against Ms. Gitto.

---

[6] <u>See</u> <u>Dana v. Truevance Management, Inc</u>., No. 05-5395, 2007 WL 2156361, at *2 (D.N.J. 2007) (stating "[a]s interpreted by the Third Circuit, the NJLAD does not provide for direct individual supervisory liability; rather, a supervisor may only be held liable for aiding or abetting an employer's unlawful employment action")(citing <u>Davis v. City of Newark</u>, No. 04-5317, 2006 WL 2583074, at *5 (D.N.J. 2006)); N.J.S.A. 10:5-12(e); <u>see</u> <u>Palladino</u>, 68 F.Supp.2d at 474.

35

## IV.   CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment filed by defendants Borough of Woodlynne and Jeraldo Fuentes is granted in part and denied in part; the motion for summary judgment filed by defendant Gitto is adjourned for thirty days for counsel to provide additional briefing concerning whether plaintiffs' NJLAD and CEPA claims survive against Ms. Gitto; and defendants' joint brief to dismiss plaintiff Moore's complaint is granted as to the dismissal, but denied as to the award of attorneys' fees.

An Order consistent with this Opinion will be entered.


　　　　　　　　　　　　　　　　　s/Noel L. Hillman
　　　　　　　　　　　　　　　　　NOEL L.HILLMAN, U.S.D.J.
At Camden, New Jersey

Dated: December 28, 2007

36